JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JAMES BANDY et al.,

Plaintiffs,

v.

MOVE, INC. et al.,

Defendants.

Case No. 2:24-cv-10492-SB-JPR

ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS UNDER RULES 12(b)(1), 12(b)(2), AND 12(b)(6) [DKT. NOS. 26, 28] AND DEFENDANTS' MOTION TO COMPEL ARBITRATION [DKT. NO. 27]

Plaintiffs are real estate agents and brokers who bring this putative class action alleging that Move, Inc. (Move), its various subsidiaries, its parent company (News Corp.), and the National Association of Realtors (NAR) fraudulently induced them into purchasing a "lead generation service" that provided false information about potential real estate buyers. After Defendants moved to dismiss the complaint and to compel arbitration, Plaintiffs filed a first amended complaint (FAC). Defendants now renew their motions, filing: (1) a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); (2) a motion to dismiss certain defendants under Rule 12(b)(2); and (3) a motion to compel arbitration. The Court held a hearing on February 28, 2025. The Court dismisses several defendants under Rule 12(b)(1), dismisses News Corp. and NAR under Rule 12(b)(2), and compels Plaintiffs and Move to arbitration.

I.

Plaintiffs are real estate agents and brokers who purchased "lead generation" services from Move. Dkt. No. 20 ¶ 1. As part of the service, Defendants collect data on consumers who "purportedly expressed a time-sensitive interest in hiring a real estate agent and broker" and sell their information to agents and brokers as

potential "leads." *Id* ¶ 11. Plaintiffs allege, however, that approximately 40 percent of the purported leads are not leads at all but rather "individuals [from] whom Defendants have both lawfully and unlawfully collected personally identifying information and who have no interest in purchasing real estate." *Id.* ¶ 13. Plaintiffs contend that Defendants deliberately sell these false leads and knowingly misrepresent the legitimacy of the service to induce customers to purchase the product. *Id.* ¶¶ 13–17.

Based on this alleged conduct, Plaintiffs filed this putative class action against Move, Move's subsidiaries (i.e., Move Sales, Inc., OpCity, Inc., OpCity Acquisition, LLC, Realtors Information Network, Inc. (RIN), and RealSelect, Inc. (RealSelect)),[1] Move's parent (News Corp.), and NAR. In their FAC, they assert claims against all defendants for: (1) fraudulent inducement; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) conversion; (6) violation of the California Civil Legal Remedies Act; (7) violation of the California Unfair Competition Law; and (8) violation of the federal Racketeer Influenced and Corrupt Organizations Act statute. Dkt. No. 20. Defendants now move to dismiss several defendants under Rules 12(b)(1) and 12(b)(2), to dismiss the action under Rule 12(b)(6) for failure to state a claim, and to compel arbitration. Dkt. Nos. 26, 27, 28.

II.

The Court first addresses the argument that the non-Move defendants (i.e., all defendants other than Move) should be dismissed under Rule 12(b)(1) because Plaintiffs have not adequately alleged Article III standing as to them. *See Bibiano v. Lynch*, 834 F.3d 966, 970 n. 4 (9th Cir. 2016) ("Courts should generally decide, as a threshold matter, whether they have subject matter jurisdiction before moving on to other, non-merits threshold issues.").

The standing doctrine is derived from Article III's limitation on the judicial power of federal courts to hear only "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (internal citations omitted). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* at 338. To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the

---

[1] RIN and RealSelect have not been served or appeared in this action, and RealSelect is not included in the caption as required by Rule 10(a). Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties.").

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (cleaned up) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden to establish each requirement "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. On a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Defendants argue that the FAC fails to adequately allege that Plaintiffs' injuries are fairly traceable to the non-Move defendants' conduct. The Court agrees and finds that the FAC lacks sufficient allegations connecting Plaintiffs' injuries to any conduct by the subsidiary defendants (Move Sales, Inc., OpCity, Inc., and OpCity Acquisition, LLC). Plaintiffs only refer to these defendants in the introductory portion of the FAC, alleging that they "operate a number of various brands of Move, Inc. in furtherance of the Scheme . . . and other unlawful conduct alleged herein." Dkt. No. 20 ¶¶ 2(b)–2(d). Such general allegations do not explain how the subsidiaries contributed to Plaintiffs' injuries. *See Ji v. Naver Corp.*, No. 21-CV-05143, 2022 WL 4624898, at *6 (N.D. Cal. Sept. 30, 2022) (traceability not met where plaintiff did not differentiate among defendants in complaint).[2]

The FAC's allegations about News Corp. and NAR are more specific, however. In asserting a claim for fraudulent inducement, Plaintiffs allege that they relied on misleading information "primarily due to representations made by News Corp. and (especially) NAR that Move operated a wholly legitimate lead generation service." Dkt. No. 21 ¶ 31. They further allege that News Corp. provided "lawfully and unlawfully acquired data of hundreds of thousands [of] consumers . . . to Move specifically for purposes of implementing and maintaining

---

[2] Although RIN and RealSelect have not yet appeared in this action, the Court finds that the FAC similarly fails to adequately allege that Plaintiffs' injuries are traceable to their conduct. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("[A] jurisdictional issue such as Article III standing may be raised *sua sponte* by the court at any time."). The FAC vaguely alleges that RIN and RealSelect engaged in a "joint venture" or "strategic partnership" with Move and NAR to "facilitate[] the data, information and operation" of Move's website. Dkt. No. 20 at 8–9, 13. Plaintiffs do not establish any "line of causation" demonstrating how RIN and RealSelect's involvement with Move's website caused their harm. *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011).

the Scheme" and that Plaintiffs "trusted and relied upon NAR's affiliation with the other Defendants." *Id.* ¶ 18. These allegations are sufficient to satisfy the traceability requirement for the fraudulent inducement claim. However, because the parties do not engage in a claim-by-claim standing analysis, and because the Court concludes in Section III that it does not have personal jurisdiction over News Corp. and NAR, it does not address whether Plaintiffs have established standing as to each and every claim.

III.

Having determined the FAC sufficiently alleges standing for at least one claim against News Corp. and NAR, the Court turns to the question of whether they should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

A plaintiff bears the burden of establishing personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion [to dismiss] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (cleaned up). A plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true, and conflicts in the parties' evidence must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

In the absence of a governing federal statute, a federal court applies the law of the forum state when considering a motion to dismiss for lack of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01. "For the exercise of personal jurisdiction over a defendant, due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ranza*, 793 F.3d at 1068 (cleaned up). A defendant may be subject to either general or specific personal jurisdiction, depending on the nature and extent of its contacts with the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127–28 (2014).

A.

"[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11 (cleaned up). Such contacts must be "constant and pervasive." *Id.* at 122. "The "paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza*, 793 F.3d at 1069. "Only in an exceptional case will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1070 (9th Cir. 2014) (cleaned up).

Plaintiffs do not dispute that News Corp. and NAR are neither incorporated in nor have their principal place of business in California. *See* Dkt. No. 26-3 ¶ 3 (declaration from NAR officer stating that NAR is incorporated and headquartered in Illinois); Dkt. No. 26-2 ¶¶ 4–5 (declaration from News Corp. officer stating that News Corp. is incorporated in Delaware and has principal place of business in New York). Rather, they contend that their contacts with California as described below are sufficient to confer general jurisdiction. However, these attenuated connections are not sufficiently continuous and pervasive to render News Corp. and NAR "essentially at home" in the state. *Daimler*, 571 U.S. at 112. The mere fact that News Corp. and NAR have contacts with and conduct business in California does not establish this case as an "exceptional" one warranting the exercise of general jurisdiction. *Martinez*, 764 F.3d at 1070; *see also Daimler*, 571 U.S. at 139 n. 20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

B.

The Court next addresses whether it may exercise specific jurisdiction over News Corp. and NAR. Courts in the Ninth Circuit employ a three-part test to determine specific personal jurisdiction: (1) the defendant must either "purposefully direct" its activities toward the forum or "purposefully avail" itself of the privileges of conducting activities in the forum; (2) the claims must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Axiom Foods, Inc. v. Acherchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). "The plaintiff bears the burden of establishing the first two prongs; if this threshold burden is met, the defendant must establish that the third prong is not met—i.e. that the exercise of jurisdiction is not fair—to avoid

jurisdiction." *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 903 (9th Cir. 2018).

Under the first prong, the Ninth Circuit distinguishes between "purposeful availment" and "purposeful direction." *Schwarzenegger*, 374 F.3d 797 at 802. The purposeful availment requirement is satisfied if a defendant "has taken deliberative action within the forum state or if he has created continuing obligations to forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Purposeful direction is established where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Plaintiffs neglect to specify whether the "purposeful availment" or "purposeful direction" test applies here, and more fundamentally, fail to satisfy either one.

Plaintiffs identify a number of News Corp.'s and NAR's contacts with California, but they are insufficient for specific jurisdiction. Plaintiffs note that News Corp. has been subject to litigation in this district, is subject to and claims compliance with California's data privacy laws, and counts the Controller of the State of California among its common stock shareholders. Dkt. No. 33 at 8. As to NAR, Plaintiffs contend that a "substantial number" of properties on NAR's "Multiple Listing Service" are located in the state.[3] *Id.* at 9; Dkt. No. 33-9. These purported contacts, however, are unrelated to Plaintiffs' claims, which concern Defendants' lead generation service. Because Plaintiffs' claims do not arise out of these contacts, they have not shown that they provide a basis for specific personal jurisdiction.[4] *See Axiom Foods*, 874 F.3d 1064 (claims must arise out of forum-

---

[3] Plaintiffs also contend, without evidence, that a "significant number" of NAR's members are based in California, asserting that it is "axiomatic" that a "significant number of NAR's membership is based in California." Dkt. No. 33 at 9.

[4] Plaintiffs have also failed to properly authenticate the evidence they rely on to claim that News Corp. and NAR conduct such activities. Dkt. No. 33-1 ¶ 2 (declaration from counsel that the attached exhibits are "true and correct copies of digital media publications which came from the sources indicated" without providing further information about what the exhibits purport to be or where he retrieved them); Dkt. Nos. 33-2 at 1, 33-3, 33-7 (exhibits providing no indication of their source). As such, they are inadmissible. *See Rohde USA, Inc. v. Erich Rohde KG Schuhfabriken of Schwalmstadt*, 32 F. App'x 250, 251 (9th Cir. 2002) (affirming dismissal for lack of personal jurisdiction where plaintiffs provided no

related activities); *Doe v. Sheriff*, 11 F. App'x 828, 830 (9th Cir. 2001) (affirming dismissal for lack of personal jurisdiction where claims did not arise out of in-state conduct).

Nor do News Corp.'s and NAR's relationships with Move, whose principal place of business is in California, establish jurisdiction over them. In contending otherwise, Plaintiffs argue that News Corp. and NAR are subject to the Court's jurisdiction because they are engaged in a "civil conspiracy" with Move. Dkt. No. 33 at 6. Several courts in this district have rejected this conspiracy theory of personal jurisdiction, however. *See, e.g.*, *Ansah v. Regime PPE*, No. 21-CV-8829-DMG, 2022 WL 19827373, at *4 (C.D. Cal. Feb. 10, 2022). Though the Ninth Circuit has not decided the issue, it has remarked that there is "a great deal of doubt" about the viability of the theory. *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002). In light of the cited cases and the absence of any contrary authority or analysis from Plaintiffs on this issue, the Court rejects their conspiracy-based argument.

As to News Corp., Plaintiffs further argue that the Court has jurisdiction because it is Move's parent, it "generates more revenue than nearly every other division of NewsCorp," and it owns Move's intellectual property. Dkt. No. 33 at 8. However, Plaintiffs cannot simply rely on News Corp.'s relationship to Move. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that minimum contacts test "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023–25 (9th Cir. 2017) (finding no specific jurisdiction based on contacts with subsidiary). Nor has Plaintiff provided evidence establishing that Move is the "alter ego" of News Corp.—i.e., that there is "such a unity of interest" between them "that the separate personalities of the two entities no longer exist"—or that News Corp. had the right to substantially control Move's activities. *Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 835 (9th Cir. 2024) (cleaned up) (requiring showing of unity of interest to impute subsidiary's minimum contacts to a parent company); *Williams*, 851 F.3d at 1024 ("Assuming . . . that some standard of agency continues to be relevant to the existence of specific jurisdiction . . . the

---

admissible evidence of purposeful availment); *Depoule-Voss v. Six Continents Hotels, Inc.*, No. 09-CV-5517, 2009 WL 3614982, at *2 (W.D. Wash. Oct. 28, 2009) (rejecting consideration of unauthenticated evidence on motion to dismiss for lack of personal jurisdiction); Fed. R. Evid. 901.

parent company must have the right to substantially control its subsidiary's activities.").

Plaintiffs have therefore failed to demonstrate that there is specific personal jurisdiction over News Corp. and NAR. Accordingly, the Court grants Defendants' Rule 12(b)(2) motion and dismisses News Corp. and NAR for lack of personal jurisdiction.[5]

IV.

In their briefing, Plaintiffs requested leave to amend to address any deficiencies in the allegations of subject matter and personal jurisdiction. "The court should freely grant leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (noting that the policy favoring amendments "is to be applied with extreme liberality"). Leave may be denied, however, for "repeated failure to cure deficiencies by amendments previously allowed" or "futility of amendment," among other reasons. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court's tentative order, provided to the parties the day before the hearing, informed Plaintiffs that if they "neglected to include essential jurisdictional facts in the FAC, they shall (1) renew their request [to amend] at the hearing, (2) identify the specific, curative facts they seek leave to allege; and (3) explain their failure to previously allege these facts." The tentative order further provided that "[f]ailure to do so will be construed as an admission of futility [of amendment]." At the hearing, Plaintiffs' counsel did not renew the request for amendment and did not present any argument on the jurisdictional issues, which the Court construes as consent to dismissal without leave to amend. Accordingly, the non-Move defendants are dismissed without leave to amend.

---

[5] Plaintiffs requested that they be permitted to conduct limited discovery on the personal jurisdiction issues. But they have not made a "colorable showing" that the Court can exercise personal jurisdiction over News Corp. or NAR. *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) (cleaned up) (requiring "some evidence tending to establish personal jurisdiction"). Nor do they support their request with anything other than a desire to "make a stronger [jurisdictional] showing." Dkt. No. 33 at 10. The request is denied. *See Boschetto*, 539 F.3d at 1020 (affirming denial of request for discovery that was "based on little more than a hunch that it might yield jurisdictionally relevant facts").

V.

Having dismissed the non-Move defendants, the Court turns to the motion to compel arbitration. Defendants argue that Plaintiffs agreed to arbitrate all disputes with Move when they purchased the lead generation service.

A.

In the FAC, Plaintiffs allege that they purchased the lead generation service over the phone with Move's sales representatives. Dkt. No. 20 ¶¶ 33–34. According to Move, its sales representatives were required to inform customers that they would receive an email confirming the details of their order and the terms of their agreement. Dkt. No. 29 ¶ 23; *see also* Dkt. Nos. 29-20–29-28 (standard operating procedures for Move sales representatives). In support, Move has provided records demonstrating that Plaintiffs received these order confirmations after their calls with Move representatives.[6] Dkt. Nos. 29-1–29-11. Each confirmation email included details about the customer's order, including information about the product purchased, the payment terms, and the cost of the service. *See, e.g.*, Dkt. No. 29-1.

At the top of the email, under a bolded and underlined "ORDER DETAILS" section, the email directed the customer to review the terms and conditions of the order:

> For the terms and conditions that apply to your order, please see below. Please review such terms and conditions carefully. By accessing or using any product or service included in your order and/or by not cancelling your order as described below, you agree to the terms and conditions for such product or service, as set forth below.

*Id.* at 2 of 4. The email also included a "TERMINATION RIGHTS" section, which provided that the order could only be cancelled if the product

[6] Defendants did not locate any order confirmations associated with Plaintiffs Noah Henderson, Bree Sweet, and Maria Hardy. *See* Dkt. No. 27-1 at 4 n. 3. They contend, however, that they would have received confirmations if they indeed purchased the lead generation service as alleged. Dkt. No. 29 ¶¶ 21–23. Plaintiffs do not challenge this argument and present no evidence to the contrary.

had not been used and the customer "request[ed] cancellation of the order within three (3) business days after placing the order." *Id.* at 3 of 4.

At the bottom of the email, under the "IMPORTANT LINKS" section, Move provided a hyperlink to the terms and conditions and reiterated that the order was subject to the terms:

> Your order is subject to the provisions contained in this order confirmation and the applicable terms and conditions set forth below. Please review such terms and conditions carefully. By accessing or using any product included in your order, and/or by not cancelling your order as described above in this order confirmation, you agree to such terms and conditions.

*Id.* The hyperlinked terms and conditions included an arbitration provision:

> You and Move agree that any and all disputes or claims that may arise between You and Move shall be resolved exclusively through final and binding arbitration, rather than in court, except that You may assert claims in small claims court if Your claims qualify. The Federal Arbitration Act shall govern the interpretation and enforcement of this Section 16. THE ARBITRABILITY OF ANY CLAIM OR DISPUTE IS TO BE DECIDED SOLELY BY AN ARBITRATOR.

*E.g.*, Dkt. No. 29-14 at 19 of 28.[7]

The terms and conditions also included an integration clause, stating that the terms (along with the terms in the confirmation email) "(a) constitute[] the complete expression of the agreement, and (b) supersede[] any and all other agreements, whether written or oral, between the parties relating to the subject matter" and that "[i]n the event of any inconsistency between the Order and [the] Standard Terms, [the] Standard Terms shall control." *E.g.*, *id.* at 3–4, 18 of 28.

[7] Defendants explain that there were five versions of the terms and conditions that governed Plaintiffs' agreements based on when they purchased the service. Dkt. No. 29 ¶¶ 13–17. Each version of the terms and conditions contained the same arbitration provision. Dkt. Nos. 29-13–29-17.

B.

The Federal Arbitration Act requires courts to enforce parties' agreements to arbitrate in line with a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A court's involvement is generally limited to determining two "gateway" questions: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (cleaned up). If both questions are answered in the affirmative, the court must compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 3. In this case, the parties only dispute whether they agreed to arbitrate. In addressing this question, federal courts apply state-law principles of contract formation. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). Under California law, contract formation requires: (1) parties capable of contracting, (2) consent, (3) a lawful object, and (4) consideration. *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1231 (2023) (citing Cal. Civ. Code § 1550). The only genuine dispute here is whether Plaintiffs consented to be bound by the arbitration provision.

1.

Plaintiffs contend that the arbitration provision was part of an unenforceable browsewrap agreement—i.e., one in which an internet user accepts the terms of use by browsing a website—because it failed to give them adequate notice of the contractual terms. They rely heavily on *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), a browsewrap case involving a consumer's purchase of tickets on the defendant's website. But this is not a consumer browsewrap case. *Cf. Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (describing courts' "reluctan[ce] to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered"). Instead, it involves an agreement reached between two commercial parties over the telephone and finalized in an individual email.

Two district courts in this state have already found Move's arbitration provision to be enforceable. *Silverman v. Move Inc.*, No. 18-CV-05919, 2019 WL 2579343 (N.D. Cal. June 24, 2019); *Herkenrath v. Move, Inc.*, No. 18-CV-4438-MWF, 2018 WL 10705782 (C.D. Cal. Aug. 21, 2018). Each court rejected the argument made here that the arbitration provision was part of an unenforceable browsewrap agreement, finding that the plaintiffs had adequate notice of the terms and conditions because Move sales representatives had informed them over the

phone that they would be receiving a written order confirmation, and the subsequent confirmation email instructed them to carefully review the terms and conditions. *See Silverman*, 2019 WL 2579343, at *11; *Herkenrath*, 2018 WL 10705782, at *3. The plaintiffs accepted the terms by continuing to use the service and not cancelling within three days. *Silverman*, 2019 WL 2579343, at *12.

The same is true here. Defendants have submitted evidence that Move sales representatives were required to tell Plaintiffs that they would receive written confirmation with the terms of the agreement. Dkt. No. 29 ¶ 23. The confirmation emails explicitly and prominently stated that the orders were subject to the terms and conditions, encouraged Plaintiffs to review them, and advised that Plaintiffs would accept the terms by using the service and not cancelling within three business days. Even if Plaintiffs did not review the terms, they were nevertheless bound by them. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.").

The competing evidence submitted by Plaintiffs does not compel a contrary conclusion. They provide declarations from former Move sales representatives stating that they did not mention the arbitration clause in their conversations with customers and did not state that "the link in the confirmation e-mail was part of the agreement." *E.g.*, Dkt. No. 31-4 ¶ 4. Plaintiffs also submit their own declarations stating that they did not "discuss arbitration clauses or other legal terms" in their calls with the sales representatives. *E.g.*, Dkt. No. 31-3 ¶ 6. They do not deny, however, that they were told by the sales representatives that they would receive and should read the confirmation email. Nor do they contest the fact that the email they received clearly instructed them about the applicability of the terms and conditions. In these circumstances, Plaintiffs had adequate notice even though they were not specifically informed over the phone about the link to the terms and conditions or the details of the arbitration provision itself. *See Silverman*, 2019 WL 2579343, at *11 (phone call admonition sufficient to put customer on inquiry notice of the terms and conditions); *Hekenrath*, 2018 WL 10705782, at *3–4 (finding the email adequate to put plaintiffs on notice).

2.

Plaintiffs raise four additional arguments that were not addressed in *Silverman* or *Hekenrath*. They claim that the arbitration provision in the written terms and conditions is unenforceable because (1) the parties' telephone conversation constituted their entire agreement; (2) the terms and conditions are

illusory; (3) the arbitration provision is substantively unconscionable; and (4) Defendants have waived the right to seek arbitration. Each argument is addressed in turn.

First, Plaintiffs contend that they entered into oral agreements with Move when they provided their credit card information over the phone and that the email confirmations did not supersede or modify the terms of those agreements. Without a novation of the oral agreement, Plaintiffs argue, the written confirmation emails do not control. Defendants counter that the confirmation emails did not modify prior oral agreements but were integrated agreements that included the final terms of the contract.

Under California law, "the terms of a final, integrated contract 'may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.'" *Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807 (2012) (quoting Cal. Civ. Proc. Code § 1856(a)); *see also* Cal. Civ. Code § 1625 ("The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."). To determine whether a contract is fully integrated, courts look to whether the parties intended the writing to serve as the exclusive embodiment of the agreement. *Grey*, 204 Cal. App. 4th at 807. "The existence of an integration clause is a key factor in divining that intent." *Id.*

Here, the terms and conditions contained an integration clause stating that the "Agreement" included both the terms and conditions and the terms in the confirmation email, "constitute[d] the complete expression of the agreement," and "supersede[d] any and all other agreements, whether written or oral, between the parties relating to the subject matter." *E.g.*, Dkt. No. 29-14 at 3–4, 18 of 28. Plaintiffs respond that the terms and conditions could not have constituted an integrated agreement because they "do not contain any of the critical terms of the agreement (description of services or cost)." Dkt. No. 31 at 15. This argument fails to recognize, however, that the terms and conditions define the integrated agreement as including the terms in the confirmation email, which set forth the key terms about payment for the service. *See* Dkt. No. 29-14 at 3–4, 18. Given the unambiguous integration clause, the written agreements control.

Second, Plaintiffs argue that the terms and conditions are illusory because Move could modify the terms and conditions unilaterally.[8] California courts, however, have repeatedly rejected this argument. *See Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013) ("[I]t has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory."). Here, Move's terms and conditions provide that it may modify the agreement "upon notifying" the customer. *E.g.*, Dkt. No. 29-14 at 11 of 28. Accordingly, the agreement was not illusory. *See Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) ("[T]he fact that one party reserves the implied power to . . . modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice.").

Third, Plaintiffs argue that the arbitration provision is substantively unconscionable because the arbitration fees would be prohibitively expensive. Under California law, a party seeking to disavow a contract as unconscionable must establish both procedural and substantive unconscionability. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). Plaintiffs have failed to establish either. They offer no evidence or argument of procedural unconscionability, which alone is fatal to their challenge. Furthermore, they have not presented evidence of the applicable fees in this case, asserting instead that they "would be prohibitively high if Plaintiffs were forced to pay them." Dkt. No. 31 at 19. Such conclusory assertions do not satisfy their burden to demonstrate substantive unconscionability. *See Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.").

Fourth, Plaintiffs contend that Defendants have waived the right to seek arbitration. A party asserting waiver must demonstrate: "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). Without citing any supporting authority, Plaintiffs contend that Defendants

---

[8] Plaintiffs further argue that the terms and conditions are illusory because there was no consideration for them. That argument incorrectly assumes, however, that the terms and conditions were a new agreement rather than part of an overall, integrated one.

have acted inconsistently with the right to arbitrate by removing this action to federal court and filing motions seeking relief other than to compel arbitration.

None of the described conduct constitutes "an intentional decision not to move to compel arbitration" or demonstrates that Move has "actively litigate[d] the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.* (cleaned up). The mere removal of a case to federal court is insufficient to prove waiver. *See Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540, 2018 WL 6505997, at *10 (N.D. Cal. Dec. 11, 2018) (collecting cases), *aff'd,* 59 F.4th 1011 (9th Cir. 2023). Nor has Move conducted itself in a manner consistent with a finding of waiver, filing its initial motion to compel arbitration one week after removing this case. This case is at the pleading stage, no case management order has been issued, and no prior ruling on the merits has been made. Under these circumstances, the filing of the Rule 12(b) motions did not constitute waiver. *See Wheeler v. LG Elecs. USA, Inc.*, No. 1:22-CV-00459, 2024 WL 51353, at *7 (E.D. Cal. Jan. 4, 2024) (finding no inconsistency in filing a motion to dismiss and no waiver where no answer filed and no discovery conducted).

Accordingly, the Court orders the parties to submit the claims against Move to binding arbitration.

VI.

The Court dismisses Move Sales, Inc., OpCity, Inc., OpCity Acquisition, LLC, RIN, and RealSelect for lack of standing, dismisses NAR and News Corp. for lack of personal jurisdiction, and compels Move and Plaintiffs to arbitration.[9] The Rule 12(b)(6) motion is denied as moot. At the hearing, the parties agreed to dismissal of this case without prejudice, which the Court will treat as functionally indistinguishable from a stay in terms of the parties' ability to seek confirmation, modification, or vacatur of an arbitration award against or in favor of Move. The clerk shall close the case.

---

[9] At the hearing, the parties agreed that Plaintiffs should arbitrate their claims against all defendants in light of the Court's ruling. While the parties are free to do so, the Court has jurisdiction to compel arbitration only as to the claims against Move.

Date: March 3, 2025

Stanley Blumenfeld, Jr.
United States District Judge